UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JALIC, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 1:25-cv-163 |
| | ) | |
| v. | ) | Judge Curtis L. Collier |
| | ) | |
| FAO SCHWARZ, LLC, et al., | ) | Magistrate Judge Michael J Dumitru |
| | ) | |
| *Defendants*. | ) | |

**M E M O R A N D U M**

Before the Court is a motion by Thinker Toy Co., LLC ("Defendant") to dismiss Plaintiff's complaint as to Defendant. (Doc. 87.) Defendant moves to dismiss under Federal Rules of Civil Procedure 12(b)(6). (*Id.*) Plaintiff filed a response in opposition (Doc. 135) and Defendant replied (Doc. 141).

## I. BACKGROUND[1]

On May 16, 2025, Plaintiff Jalic, Inc. filed a complaint for copyright infringement against numerous defendants. (Doc. 1.) Plaintiff is a manufacturer of licensed collectibles from popular media, such as from movies, television shows, and video games. (*Id.* ¶ 23.) Most relevant here, Plaintiff manufactures and sells replica swords from the book series A *Song of Ice and Fire* and the television adaption *Game of Thrones*. (*Id.*) In particular, Plaintiff owns "the exclusive rights under the Copyright Act of 1976 . . . to reproduce and distribute from the Game of Thrones series certain replica swords known as Longclaw, Blackfyre, and Oathkeeper." (*Id.* ¶ 24.) Plaintiff holds

[1] This summary of the facts accepts all the factual allegations in Plaintiff's complaint as true. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

copyright registrations, issued by the U.S. Copyright Office, for each of these three swords. (*Id.* ¶¶ 26–28.)

It is undisputed that the essential elements of a sword are "a long, pointed blade joined to a hilt. The hilt—the handle portion of the sword—traditionally consists of three components: the guard (or cross guard), which protects the hand; the grip, which allows control; and the pommel, which serves as both counterweight and ornament." (Doc. 88 at 2; Doc. 135 at 7.) The pommel, affixed to the butt-end of the handle, throughout history has been crafted with ornamental designs. *Id*.

Plaintiff's Longclaw is a collectable replica sword. (Doc. 1 ¶ 24.) It includes designs and features such as a carved wolf head for the pommel and a crossguard which "ends in an upturned point on each side." (*Id.* ¶ 26.) The blade and crossguard are made of metal and have a metallic finish. (*Id.*) The sword is fifty inches long, "made of only the highest quality materials available with special attention made to the finish and detailing" and retails for approximately three hundred dollars. *Book Longclaw, Sword of Jon Snow*, JALIC BLADES, https://jalicblades.com/book-longclaw-sword-of-jon-snow/ (last accessed Aug. 26, 2026).[2]

Defendant is a children's store based in Oregon. (Doc 1. ¶ 16.) Plaintiff alleges that Defendant, without consent, "have engaged and/or are currently engaged in the willful, continuous, and systematic production and/or distribution of products that infringe on [Plaintiff's] copyrights." (*Id.* ¶¶ 29, 74.) As relevant here, Plaintiff alleges that Defendant "sells a foam sword that is identical or substantially similar to [Plaintiff's] Longclaw." (*Id.* ¶ 61.) This sword was marketed on Defendant's website as "Dress Up – Wolf Toy Sword (Foam)" and sold for $20.00. (*Id.*)

[2] The parties agree that the Court may take judicial notice of Plaintiff's website. (Doc. 88 at 9; Doc. 135 at 4 n.1.)

Plaintiff claims infringement based on the fact that Defendant's product also "features a wolf head on the pommel, a black hilt, and an upturned point on each side of the crossguard." (Doc. 135 at 1.)

## II. STANDARD OF REVIEW

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all of the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 49 F.3d 710, 716 (6th Cir. 2005)). The court is not, however, bound to accept bare assertions of legal conclusions as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In deciding a motion under Rule 12(b)(6), a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in

original) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997).

## III. <u>DISCUSSION</u>

Under the Copyright Act, a copyright owner has the exclusive right to reproduce, prepare derivative works, and authorize copying, distribution, or public display of the work. 17 U.S.C. § 106(1)–(4). "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 . . . is an infringer of the copyright." 17 U.S.C. § 501(a).

To establish an infringement claim, Plaintiff must show (1) ownership of a valid copyright, and (2) copying of original elements of the protected work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). A copyright registration certificate is *prima facie* evidence of copyright ownership. *See* 17 U.S.C. § 410(c). For present purposes, Defendant concedes the first prong, that Plaintiff owns a valid copyright. (Doc. 88 at 10–11.) Thus, the sole issue is whether there was copying that amounts to infringement.

"Since direct evidence of copying is rarely available, a plaintiff may establish 'an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue.'" *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) (quoting *Ellis v. Diffie,* 177 F.3d 503, 506 (6th Cir. 1999)).

Defendant asserts that "the Sixth Circuit allows for an inverse relationship between the two prongs: 'where the similarity between the two works is strong, less compelling proof of access

may suffice, and vice versa.'" (Doc. 135 at 3) (quoting *Stromback*, 384 F.3d at 293.) But the Sixth Circuit has cast serious doubt on this proposition. First, "[a]ny discussion of the rule in *Stromback* was entirely dictum" and "it does not appear that this circuit has meaningfully relied on the rule . . . in any binding precedent." *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 536 n.1 (6th Cir. 2020). Second, the Circuit Court cautioned that "[i]n any event, the 'inverse-ratio rule' appears to be on its last legs" and notes the Ninth Circuit, along with all other circuits who have considered it, abrogated the rule "[f]earing that the rule has little use in the modern, 'digitally interconnected world' in which 'the concept of access is increasingly diluted.'" *Id*. (quoting *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 952 F.3d 1051, 1068–69 (9th Cir. 2020) (en banc)). Third, like the plaintiff in *Enchant Christmas Light Maze*, Plaintiff has not elaborated what a lower standard of similarity would be or how it would affect this case. 958 F.3d at 536 n.1. Accordingly, the Court will not follow this rule.

The Court will address each prong, access and substantial similarity, in turn.

**A. Access**

"Access requires the defendant's seeing or having a reasonable opportunity to see plaintiff's work and thus having the opportunity to copy it." *Winfield Collection, Ltd. v. Gemmy Indus., Corp.*, 147 F. App'x 547, 553 (6th Cir. 2005). Defendant claims that there is no evidence of access, and no allegations it watched the show *Game of Thrones* or were otherwise familiar with Longclaw. (Doc. 88 at 11; Doc. 141 at 5–6.)

Defendant also asks the Court to take judicial notice of the show and its popularity. (*See* Doc. 88 at 9) ("Courts further take judicial notice of facts of cultural and wide-spread notoriety, such as the existence and nature of the *Game of Thrones* series.") ("Courts also recognize historical

and cultural facts as proper subjects of judicial notice."). The Court will do so, but it is a double-edged sword.

By the final season of the show, each episode was averaging approximately thirty to forty million viewers across HBO platforms. John Koblin, '*Game of Thrones' Finale Sets Ratings Record*, N.Y TIMES, Aug. 28, 2017; *HBO's Game of Thrones Shatters Viewership Records During Final Season*, THE INTERNET & TELEVISION ASS'N, May 21, 2019 ("[T]his last season averaged more than 44 million viewers per episode after accounting for delayed viewing and viewership across all platforms."). The Longclaw sword features prominently in the series and would be known to a large swath of the general lay public. (Doc. 1 ¶ 25.) ("Longclaw, Blackfyre, and Oathkeeper are three of the most iconic swords from the Game of Thrones series and . . . are featured extensively throughout the television show.") Having taken judicial notice of the *Game of Thrones* series and its wide cultural reach and influence, the Court finds that Defendant had a reasonable opportunity to see and copy the sword.

**B. Substantial Similarity**

The Court of Appeals for the Sixth Circuit has adopted a two-part test for determining substantial similarity in copyright cases. *See Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003) ("We approve this method, and adopt it."). "The first step 'requires identifying which aspects of the artist's work, if any, are protectible by copyright,'; the second 'involves determining whether the allegedly infringing work is 'substantially similar' to protectible elements of the artist's work.'" *Id*. (quoting *Sturdza v. United Arab Emirates,* 281 F.3d 1287 (D.C. Cir. 2002).

The first step "parses from the work the elements neither afforded copyright protection nor properly considered in the ordinary observer test." *Stromback*, 384 F.3d at 294. To do so, the Court will "filter out the unoriginal, unprotectible elements—elements that were not independently

created by the inventor, and that possess no minimal degree of creativity." *Kohus*, 328 F.3d at 855. "It is axiomatic, to begin with, that mere abstract ideas are not protectible, but the expression of an idea is." *Id*. "Copyright is limited to those aspects of the work—termed 'expression'—that display the stamp of the author's originality." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985). Additionally, "the principle of *scenes a faire* excludes copyright protection for 'incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic.'" *Stromback*, 384 F.3d at 296 (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 616 (7th Cir. 1982)).

"[T]he final step is to determine whether the allegedly infringing work is "substantially similar" by comparing the two works. *Id*. at 297. "Substantial similarity exists where 'the accused work is so similar to the plaintiff's work that an ordinary[,] reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.'" *Id*. (quoting *Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1288 (10th Cir. 1996)).

When the subject matter is not complex or technical, expert testimony is not necessary to assist the court in filtering or to determine similarity. *See Stromback*, 384 F.3d at 295–96. "[T]he inquiry in the second prong of the substantial similarity test should focus on the *intended audience.* This will ordinarily be the lay public, in which case the finder of fact's judgment should be from the perspective of the lay observer." *Kohus*, 328 F.3d at 857. "In the end, the question is whether, based upon his 'net impression' of the works' expressive elements, the ordinary lay observer would find them substantially similar to one another." *Stromback*, 384 F.3d at 297.

Defendant makes multiple arguments regarding the materials and intended uses of the two products. (*See generally* Doc. 88.) But these considerations are not relevant to the current inquiry.

The pertinent facts are the unique expression of the idea. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ("[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright."). The physical medium of the idea or design is of little consequence to the substantial similarity inquiry. Defendant claims that "[n]o reasonable consumer—let alone an adult collector—could mistake a $15 foam toy for a $280 metal display replica." (Doc. 88 at 16.) But, while this may be relevant to a trademark analysis for consumer confusion, it is simply not the standard for copyright infringement.

Here, Plaintiff does not dispute that animal and wolf motifs have been used on sword hilts and pommels for centuries, or that "copyright extends to the basic notion of a sword consisting of a pommel, hilt, guard, and blade." (Doc. 135 at 7.) Instead, the thrust of Plaintiff's argument is that "it owns the copyright to the expression of the wolf head pommel [Plaintiff] specifically designed for Longclaw." (*Id.* at 8.) Plaintiff also asserts it "own the copyright to the upturned [cross]guard [] specifically designed for Longclaw." (*Id.*) Defendant parries that "Plaintiff relies on conclusory labels and the unprotectable idea of a wolf head sword." (Doc. 141 at 1.)

Filtering out the generic, practical, and indispensable attributes of a sword, what is left are certain specific attributes Plaintiff claims are distinctive and protectable. Starting with the pommel, both depict a wolf head. The mere idea of placing a depiction of a wolf head as a pommel is not protectable. But the embodiment of it, and particular expressive elements, may be.

The Court similarly filters out all non-protectable aspects of a wolf head. For example, any qualities that are inherent in depicting a wolf warrant no protection. *See Enchant Christmas Light Maze*, 958 F.3d at 538; *The Bandana Co., Inc. v. TJX Companies*, Case No. 05-206, 2005 WL 1201176, at *2 (W.D. Ky. May 29, 2005) ("[M]any elements are not protectible because they

depict naturally occurring postures or positions. No copyright protection may be afforded to elements of expression that naturally flow from the idea of an animal sculpture."); *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 551 (5th Cir. 2015) ("[A]natomical features on replicas of animals are ideas not entitled to copyright protection.") But "[t]hat is not to say that realistic reproductions of live animals may never enjoy copyright protection." *Enchant Christmas Light Maze*, 958 F.3d at 538. Rather it is only the original expression contributed, for example, "the animals' 'pose, attitude, gesture, muscle structure, facial expression, coat, and texture,' . . . may earn 'thin copyright' protection,' if original." *Id.* (quoting *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 775 (9th Cir. 2018)).

The parties provided images of the products for comparison, which the court will use as a reference. (Doc. 1 ¶¶ 26, 61; Doc. 141 at 9.)





The wolf head on Longclaw (left) is bright white, with a broad face, large prominent red eyes, a downward facing snout, pointed ears, and rigid, ornately detailed fur. The expression evokes a fierce, perhaps angry temperament. The pommel on Defendant's wolf sword (right) is

deep brown, with a narrow face, recessed small red eyes, an upturned snout, rounded ears, and smooth, brushed-back fur. Its expression prompts a neutral, perhaps inquisitive tone.

Many of the similarities are inherent to wolf anatomy, such as pointy raised ears and a combed back pronounced snout. Thus, they are filtered out. In terms of coloring, the pure white of Longclaw aims to depict a dire wolf and, since it closely resembles the animal as believed to have been found in nature, the coloring does not merit artistic protection. *See, e.g.*, *Dire Wolf*, U.S. NATIONAL PARK SERVICE, https://www.nps.gov/articles/000/dire-wolf.htm (last accessed August 28, 2026); *Anatomy of the Dire Wolf*, Colossal Labs. & Biosciences, https://colossal.com/direwolf/biology/ (last accessed August 28, 2026). Regardless, the shade of Defendant's wolf is completely different, yielding no similarity or resemblance.

Only the red eyes of Plaintiff's wolf may be deemed fanciful, as they are stylized in a way that would not be found in nature. But, besides being red, the shape and depiction of the eyes in the two pommels are far from substantially similar enough to presume copying.

Regarding the crossguard, both appear to project perpendicularly from the blade, with downturned protrusions that bend inwards toward the blade. On Longclaw, the crossguard includes a noticeable diamond shape at the very center, with a raised vertical edge. The crossgaurd on Defendant's wolf sword appears to veer up in a point around a diamond shape that is instead comprised by the blade. While there is some similarity in the designs, it is not so similar or of such "substance and value" that it would lead an ordinary person to conclude there must have been unlawful appropriation of protectible expression. *Stromback*, 384 F.3d at 296.

Having reviewed solely the expressive elements side-by-side, the Court cannot find substantial similarity. The expression of the constituent features and overall exhibition would not lead a reasonable lay observer to conclude Defendant's wolf sword was copying Longclaw. What

similarities exist are too generalized to meet the legal standard for copyright protection. The Court agrees with Defendant that "[n]o amount of discovery can change what those swords look like," making dismissal before discovery appropriate. (Doc. 141 at 5.) The copyright laws were meant as a shield to protect original work, not as a sword to create a monopoly on the expression of an idea. *See Omega S.A. v. Costco Wholesale Corp.*, No. CV 04-05443 TJH, 2011 WL 8492716, at *1 (C.D. Cal. Nov. 9, 2011), *aff'd on other grounds*, 776 F.3d 692 (9th Cir. 2015) (finding copyright misuse when defendant "used the defensive shield of copyright law as an offensive sword."); *Feist*, 499 U.S. at 349–50 ("[C]opyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.")

## IV. <u>CONCLUSION</u>

In view of the many differences between the works at issue, the Court finds as a matter of law that substantial similarity does not exist here. Therefore, Plaintiff's claim for copyright infringement fails.

Accordingly, Defendant's motion to dismiss will be **GRANTED**.

**AN APPROPRIATE ORDER WILL ENTER.**

**/s/________________________**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**